SHOFNER *v.* REES.

4-7151                              175 S. W. 2d 203

Opinion delivered November 8, 1943.

*Eugene Coffelt* and *John W. Nance,* for appellant.

*Vol T. Lindsey* and *Floyd L. I. Rees,* for appellee.

Robins, J. Appellant, Jim Shofner, on March 6, 1940, delivered to Jack Gorum, operator of a trucking business in Bentonville, Arkansas, an Allen calculator, and on the same day Gorum executed a written contract, by which he agreed to pay therefor $323.40, of which $33.40 was paid in cash, the remainder payable in monthly installments of $16.11 each. It was stipulated in the contract that title to the machine should remain in appellant until all said installments should be paid, and that, in event of default in the payment of any installment, Gorum should, upon demand of appellant, surrender said machine without process of law. On August 12, 1942, three installment payments being in default, appellant demanded and Gorum voluntarily surrendered to him the calculator. Shortly after taking possession of the calculator appellant, having made certain repairs thereon, sold same for $175.

Appellee, Floyd L. I. Rees, had been acting as Gorum's attorney, and on July 25, 1942, Gorum executed to appellee his promissory note for $1,793.13, and at the same time, to secure said note, executed to appellee a chattel mortgage, by which he mortgaged certain personal property, including the above mentioned calculator. Prior to the execution of this mortgage, suits were instituted against Gorum by some of his other creditors, but all

these suits appear to have been settled prior to the trial of the case at bar.

On August 27, 1942, appellee filed this suit to recover on his note and to foreclose his mortgage against Gorum, and appellant was made party defendant, to the end that the mortgage might be foreclosed against the calculator or judgment recovered against appellant for the conversion thereof.

Gorum entered his appearance, but filed no answer. Appellant answered, denying that Gorum was indebted to appellee, denying that appellee had any interest in or lien upon the calculator, and alleging that the mortgage sought to be foreclosed by appellee was fraudulent and without any consideration. There was a decree by the lower court in favor of appellee against Shofner in the sum of $100, interest and costs, and the case was continued as to Gorum. From this decree appellant has appealed.

Appellee testified in general terms that Gorum owed him the amount of the note for $1,793.13. Gorum testified that he thought he owed appellee, at the time he gave the mortgage, "around $600 or $700." There was drawn from both appellee and Gorum the admission that, at the same time the note and mortgage for $1,793.13 were executed, a contract was executed by Gorum and appellee, and, when this contract was finally produced, it disclosed an agreement that, on sale of the chattels mortgaged to secure an ostensible debt of $1,793.13, owing by Gorum to appellee, appellee was to receive $500 out of the proceeds of said property, and Gorum was to receive the next $1,000, and the balance, up to $1,793.13, was to be divided two-thirds to Gorum and one-third to appellee; and any surplus above $1,793.13 should belong to Gorum. Although appellant had in his answer denied the existence of any indebtedness from Gorum to appellee, appellee produced no books of account or records of any kind to evidence the existence of an indebtedness of $1,793.13, and while on the witness stand appellee made no attempt to explain the items of which this alleged indebtedness consisted, merely stating that it was for

legal services. It appeared from the testimony of Gorum and appellee that a considerable part of the mortgaged property had been sold by them, and out of the proceeds thereof $375 had been paid to appellee, the remainder of the proceeds having been used to settle other debts owing by Gorum, but that, at the time of the trial, there still remained on hand unsold a part of the mortgaged property, the value of which was not shown.

The *prima facie* presumption of verity which ordinarily attaches to a written obligation was, as to the note sued on herein, destroyed by the testimony of the payor that in reality he owed less than half of the amount indicated in the writing and by the admission of the payee and payor that there was executed simultaneously with this note a contract, the effect of which was to reduce from $1,793.13 to $597.71 the amount to be collected by the payee through the mortgage securing the note. Under these circumstances, the verified answer of appellant denying the existence of any debt cast on appellee and Gorum the duty of making a full disclosure as to the manner in which the indebtedness from Gorum to appellee arose and the various items thereof. 41 C. J., 391. To discharge this burden it was necessary that appellee do more than merely testify in general terms that Gorum owed him the amount of the note. It was incumbent on appellee to show definitely the existence of the alleged indebtedness. While Gorum testified that he "imagined" that he owed appellee $600 or $700, at the time he gave the note and mortgage for $1,793.13, yet Gorum did not state how the indebtedness arose nor did his testimony throw any light on the items composing the alleged indebtedness. We do not find in the record any satisfactory testimony sufficient to establish the amount and validity of the indebtedness claimed to be due by Gorum to appellee and sued on herein.

Furthermore, the undisputed testimony showed that two steel chairs and four filing cabinets covered by the mortgage had not yet been sold. The value of this furniture was not shown by the testimony. Equity would require that this mortgaged property be sold and the pro-

ceeds applied to the discharge of the balance, if any, actually due on the mortgage indebtedness before any judgment could be rendered against appellant who, in re-possessing his calculator, was proceeding under authority given him under his contract with Gorum, by the provisions of which appellee was equally bound.

It follows from what has been said that the lower court erred in rendering judgment against appellant. The decree of the lower court is accordingly reversed and the cause remanded with directions to dismiss the complaint, in so far as same affects appellant, for want of equity.